IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHICAGO TITLE INSURANCE
COMPANY,

                Plaintiff,                     OPINION AND ORDER

    v.                                          08-cv-341-bbc

RUNKEL ABSTRACT &
TITLE COMPANY,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this civil action for monetary relief, plaintiff Chicago Title Insurance Company

alleges that defendant Runkel Abstract & Title Company breached its agency agreement with

plaintiff when it failed to exempt a properly recorded restrictive covenant from a title

insurance commitment that it issued on behalf of plaintiff. Plaintiff seeks indemnity from

defendant for its losses resulting from the breach. Jurisdiction is present. 28 U.S.C. § 1332.

      Before the court are the parties' cross motions for summary judgment. Dkt. ##18

and 25. Plaintiff contends that it is entitled to judgment as a matter of law because

defendant has admitted breaching the agency agreement. Although defendant admits that

it erred in not exempting the restrictive covenant, it moves for summary judgment on the

ground that plaintiff forfeited its right to indemnity under Wisconsin law by failing to give

defendant an opportunity to protect its interests.  Because the parties agreed that defendant

breached the settlement agreement and I find that plaintiff did not forfeit its right to

indemnity under state law by failing to act in good faith toward defendant, I am granting

plaintiff's motion for summary judgment as to liability on its breach of contract claim.

Defendant's motion for summary judgment will be denied.

Additionally, plaintiff has moved to strike evidence submitted by defendant in

support of its motion for summary judgment as inadmissible and asked the court to disregard

any proposed facts relying on the evidence.  Dkt. #36.  Plaintiff asserts that an October 24,

2007 settlement letter between the parties in which plaintiff purportedly makes admissions

concerning its liability is inadmissible under Fed. R. Evid. 408.  Plaintiff also contends that

statements made to a newspaper by unknown Wausau property owners about rezoning of

the property at issue are inadmissible hearsay under Fed. R. Evid. 801(c).  Defendant has

not opposed the motion.  Because I agree that the settlement letter and property owner

statements are inadmissible, I will disregard them and any proposed fact relying on them.

Accordingly, plaintiff's motion to strike will be denied as unnecessary.

For the purpose of deciding this motion, I find from the parties' proposed findings

of fact and the contract executed by the parties that there is no genuine issue with respect

to the following material facts.

2

UNDISPUTED FACTS

Plaintiff Chicago Title Insurance Company is a Nebraska corporation that is authorized to write title insurance in Wisconsin.  Defendant Runkel Abstract & Title Company is a title agency incorporated in Wisconsin, with its principal place of business in Marathon County, Wisconsin.

On September 13, 1999, the parties entered into a written agency agreement, which was in full force and effect on or about December 6, 2005.  The agreement granted defendant authority to "validate, countersign, issue and deliver commitments, policies and endorsements" for plaintiff and required defendant to perform its duties "with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions" of plaintiff.  The agreement contained an indemnification clause, which stated that defendant "shall be liable to and agrees to indemnify and to save harmless [plaintiff] for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from" omissions or other inaccuracies in any commitment or policy and "errors and/or omissions in the abstracting or examination of title."  With respect to claims, the agreement stated that defendant "shall lend all reasonable assistance, without charge to [plaintiff], in investigating, adjusting or contesting" a claim but "shall not be required to act as or provide counsel in connection with said claim."  The agreement also prevented defendant from adjusting any

3

claim for loss for which plaintiff might become liable unless defendant first obtained written approval from plaintiff.

On or about December 6, 2005, defendant issued a title insurance commitment on behalf of plaintiff to WM Development, LLC for an 88-acre property adjoining the municipal boundaries of Wausau, Wisconsin.  At the time WM purchased the property, it was zoned A-1 agricultural and was burdened with a restrictive covenant, which limited 33.33 acres of the property to single family residential or agricultural use.  Defendant failed to exempt the restriction from the coverage of the title insurance commitment.  In a fax dated April 19, 2006 to WM's counsel, defendant admitted the defect and admitted that it should have excepted the defect from the coverage of the title insurance commitment it issued on behalf of plaintiff:  "The restriction was overlooked in [the] title examination and erroneously omitted from [the] title commitment."

WM made a claim for damages against plaintiff for the decrease in value of the property attributable to the defect in title.  WM put extreme pressure on plaintiff to resolve the claim during 2006, threatening to sue plaintiff for bad faith if it failed to do so.  On October 10, 2006, plaintiff and WM entered into an agreement for binding appraisal, which provided that an appraiser would assess the property's diminished value pursuant to a "joint instruction letter."  Plaintiff and WM agreed that the appraiser's determination would be

4

binding and uncontestable.  Marvin Pilgrim, who works for defendant, recommended an appraiser whom WM and plaintiff agreed to accept.

On October 2, 2006, plaintiff's attorney submitted a draft joint instruction letter to WM's attorney and sent a copy to Pilgrim.  Plaintiff and WM extensively negotiated the contents of the joint instruction letter, especially the terms related to the property's use, zoning and restrictive covenant.  WM asserted that the value of the loss should be based on the property's intended use as a combined development of single family and multifamily residences.  WM argued that the property would have been rezoned to permit all of those uses had a portion of it not been encumbered by the restrictive covenant.  Plaintiff asserted that pursuant to the policy, the loss should be measured by WM's use of the property as of the exact date on which the defect was discovered.

Although the original appraiser declined to assess the property, plaintiff and WM submitted a joint instruction letter to appraiser Ralph Banke on or around December 18, 2006.  The resulting instruction letter did not adopt plaintiff's position but reflected a compromise between plaintiff and WM.  It instructed Banke to determine "the diminution in value of the [33 acres] caused by the defect in title as of the date of the discovery of the defect," or April 14, 2006, by providing two values:  the fair market value of the property subject to the defect (the "burdened value") and the fair market value of the property based on the assumption that no such defect existed (the "unburdened value").  Plaintiff agreed

5

to pay WM the loss, or the difference between the unburdened value and the burdened value. In negotiating the joint instruction letter, plaintiff's attorney hoped that implicit in the letter was the direction to the appraiser that he value the property with its existing zoning.

Sometime after December 18, 2006, plaintiff's attorney told Pilgrim about the settlement negotiations and explained to him that plaintiff most likely would expect defendant to pay for the loss. Plaintiff's attorney advised Pilgrim that defendant should put its errors and omissions insurance carrier on notice. Pilgrim responded that the effect of the claim might capsize his company.

On January 5, 2007, Banke issued a report assessing the diminished value of the 33 acres at $833,250.00. He produced two valuations: one for the property in its present condition with deed restrictions and the second with an anticipated zoning change. Plaintiff apprised defendant of the status of the claim and provided copies of draft appraisal agreements. Defendant did not attempt to control or otherwise interject its opinion into the pending litigation or the settlement of the claim. On January 19, 2007, Pilgrim told plaintiff's attorney that defendant would be sending notice of the claim to its insurance carrier. On January 22, 2007, plaintiff's attorney notified Pilgrim in writing of the indemnity provision in the agreement and plaintiff's expectation that defendant cover plaintiff's losses and expenses resulting from the title defect.

6

In a February 21, 2007 letter to plaintiff's counsel, WM notified plaintiff that it was in default of their binding appraisal agreement.  On February 27, 2007, plaintiff's counsel wrote Banke, pointing out that he had failed to follow instructions provided in the joint instruction letter and asked that he complete the appraisal as instructed.  At that time, plaintiff also filed suit against WM in state court seeking an order declaring in part that the parties had not yet received an appraisal as contemplated by the agreement.  WM took the position that the joint instruction letter was silent on the rezoning issue and if plaintiff had wanted Banke to make other assumptions, it should have negotiated those as part of the joint instruction letter.

Ultimately, plaintiff settled the claim by paying WM the assessed loss amount of $833,250.  Plaintiff incurred attorneys fees in excess of $111,829.73 in investigating and settling the claim with WM.  Although plaintiff has demanded that defendant indemnify it for the loss resulting from the breach of the agreement, defendant has refused to do so.  Plaintiff has incurred more than $40,155.65 in attorneys fees and costs in attempting to enforce the agency agreement with defendant.

OPINION

A.  Standard of Review

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 322-23 (1986).  In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, in order to avoid summary judgment, the non-moving party must supply sufficient evidence for each essential element of its case to allow a reasonable jury to render a verdict in his favor.  Kampmier v. Emeritus Corporation, 472 F.3d 930, 936 (7th Cir. 2007); Sanchez v. Henderson, 188 F.3d 740, 743 (7th Cir. 1999). The mere existence of some alleged factual dispute is insufficient to defeat a properly supported motion for summary judgment.  Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999).  "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law.'"  Borcky v. Maytag Corporation, 248 F.3d 691, 695 (7th Cir. 2001) (quoting Oest v. Illinois Department of Corrections, 240 F.3d 605, 610 (7th Cir. 2001)).

8

B. Analysis

Defendant does not deny that it breached its agency agreement with plaintiff or that it agreed to indemnify plaintiff for claims resulting from such breaches. The only contested issue is whether plaintiff forfeited its right to indemnity by violating its duty to act fairly and in good faith when dealing with defendant.

The parties agree that Wisconsin law applies in this case. In Wisconsin, every contract carries with it a duty of good faith and fair dealing. Kreckel v. Walbridge Aldinger Company, 295 Wis. 2d 649, 661-62, 721 N.W.2d 508, 514 (Ct. App. 2006) (citing Wisconsin Natural Gas Company v. Gabe's Construction Company, 220 Wis. 2d 14, 21, 582 N.W.2d 118 (Ct. App. 1998)). "[T]here is an implied undertaking in every contract on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out . . . the agreement." Ekstrom v. State, 45 Wis. 2d 218, 222, 172 N.W.2d 660 (1969); see also Metropolitan Ventures, LLC v. GEA Associates, 291 Wis. 2d 393, 415, 717 N.W.2d 58, 69 (2006) (quoting same). Good faith is simply a mutual duty of cooperativeness that prohibits a party from taking "opportunistic advantage in a way that could not have been contemplated at the time of drafting." Market Street Associates Ltd. Partnership v. Frey, 941 F.2d 588, 595 (7th Cir. 1991) (applying Wisconsin law). Examples of bad faith include arbitrary or unreasonable conduct or inaction that evades the spirit of the bargain or amounts to a lack of diligence and slacking off, willful

rendering of imperfect performance and interference with or failure to cooperate in the other

party's performance.  Forseid v. State Bank of Cross Plains, 197 Wis. 2d 772, 796-97, 541

N.W.2d 203, 213 (Ct. App. 1995) (citing Restatement (Second) of Contracts § 205 cmt.

d (1981)).  "A party can be liable for breach of the implied covenant of good faith 'even

though all the terms of the written agreement may have been fulfilled.'" Id. at 662 (quoting

Wisconsin Natural Gas, 220 Wis. 2d at 21-22).

Relying on these principles, courts have found an implied obligation for an

indemnitee to provide reasonable notice to the indemnitor, even where the contract's

indemnification clause does not contain such a requirement.  West Bend Company v.

Chiaphua Industries, Inc., 112 F. Supp. 2d 816, 826 (E.D. Wis. 2000) (citations omitted)

(fairness requires prompt notice so indemnitor may respond to claim and protect its interests

as party ultimately paying bill).  Failure to provide either actual or constructive notice of a

claim breaches the implied condition and forfeits the right to indemnification.  Kreckel, 295

Wis. 2d at 662.

The indemnification clause at issue in this case does not contain any provision

concerning notice of a potential indemnification action and does not expressly prohibit

defendant's involvement in a claim.  The agency agreement provides only that defendant was

to lend plaintiff reasonable assistance in investigating, adjusting or contesting any claims;

defendant was not required to act as or provide counsel with respect to claims; and

10

defendant could not adjust "any claim for loss for which plaintiff might become liable unless defendant first obtained written approval from plaintiff."

Defendant argues that reasonable notice and providing defendant with an opportunity to protect its own interests are implied conditions of the parties' agreement, and that by failing to provide these conditions, plaintiff breached the agreement and is not entitled to indemnification.  Specifically, defendant asserts that plaintiff failed to do the following:  notify defendant of its right to seek indemnity until it was too late for defendant to act on its own behalf; tender defense of the WM claim to defendant; involve defendant in the claim in any way; advise defendant of its right to hire counsel; and advise defendant to review settlement strategy and agreements.  Defendant also contends that plaintiff mishandled the defense of the claim by allowing the joint instruction letter to be vaguely worded and expressly waiving any right to appeal or correct the appraiser's report.  Although I agree that there is an implied condition in the parties' agreement that plaintiff would act fairly and in good faith in handling the claim for which it would later seek indemnification, I do not find that plaintiff violated its duty.

Contrary to defendant's assertions, it did have at least constructive notice of the claim because it was well aware of the incident that led to it.  Defendant was the first to realize its mistake and informed WM and plaintiff of that fact.  Further, it is undisputed that after WM filed suit, Marvin Pilgrim, who works for defendant, recommended an appraiser who

11

could help settle the matter.  The parties also agree that plaintiff sent Pilgrim a draft of the joint instruction letter on October 2, 2006 (the same day plaintiff sent the letter to WM), that plaintiff told Pilgrim about the settlement negotiations and the likelihood that it would ask defendant to pay for the loss sometime after December 18, 2006 and that plaintiff apprised defendant of the status of the claim and provided it with copies of draft appraisal agreements.  Therefore, although plaintiff did not formally notify defendant in writing of its intent to seek indemnification until January 22, 2007 (after the issuance of the appraisal), defendant had notice of the claim well before then.

Defendant argues that under the terms of the agency agreement, it could not take any action with respect to claims.  However, the agency agreement states only that defendant must first seek written permission from plaintiff to intervene.  Defendant could have attempted to intervene in the resolution of the claim well before the appraisal letter by hiring its own counsel, asking plaintiff to keep it better informed or advising plaintiff of its position with respect to settlement of the claim.  Nothing in the agreement prevented defendant from doing any of these things, and nothing in the record shows that plaintiff intentionally did anything to prevent defendant from protecting its own interests.

Although defendant now asserts that plaintiff should have tendered the defense to defendant and advised defendant of its right to hire counsel and review settlement strategy and agreements, defendant cites no authority requiring plaintiff to do so.  Plaintiff's duty

12

was to act honestly and reasonably.  The conduct that defendant complains about does not

rise to the level of bad faith.  Defendant criticizes plaintiff for approving a vague joint

instruction letter and expressly waiving any right to appeal or correct the appraiser's report.

However, the facts show that plaintiff vigorously negotiated the content of the letter and

believed in good faith that it conveyed the correct instructions to the appraiser.  Agreeing

to binding mediation or arbitration is a common practice in litigation.  Absent evidence of

lack of diligence, slacking off or willful poor performance on plaintiff's part, I can not find

that plaintiff acted in bad faith.

Finally, defendant alludes to what can be interpreted as plaintiff's fiduciary duty.  A

fiduciary relationship arises when there is either a formal commitment to act for the benefit

of another or there are special circumstances from which the law will assume an obligation

to act for another's benefit.  Zastrow v. Journal Communications, Inc., 286 Wis. 2d 416,

434, 703 N.W.2d 673, 682 (Ct. App. 2005) (citations omitted); Noonan v. Northwestern

Mutual Life Insurance Company, 276 Wis. 2d 33, 47, 276 N.W.2d 254, 260-61 (Ct. App.

2004) (quoting Merrill Lynch, Pierce, Fenner, Inc. v. Boeck, 127 Wis. 2d 127, 136, 377

N.W.2d 605 (1985)).  In Prosser v. Leuck, 225 Wis. 2d 126, 592 N.W.2d 178 (1999), for

example,  the insurance company expressly agreed to litigate and settle any claims brought

against the insured.

13

In the instant case, plaintiff made no formal commitment to defendant to act for its benefit. The agency agreement did not state explicitly that plaintiff would assume the defense of all legal claims on defendant's behalf, and it did not foreclose defendant's involvement in such claims. Defendant could have asked to participate in the WM action, sought independent legal advice or otherwise objected to plaintiff's handling of the claim. Had plaintiff refused to allow defendant to participate, one could argue that defendant's complete dependence on plaintiff made plaintiff a fiduciary. Defendant has not shown that it was barred from participating.

Further, even if plaintiff had a fiduciary duty to protect defendant's interest in the claim, defendant has not established that plaintiff violated that duty. Fiduciary duties vary depending on the specific type of relationship. Generally, they involve honesty, fidelity and good faith. Zastrow, 286 Wis. 2d at 434; see also Market Street, 941 F.2d at 595 (in Wisconsin, fiduciary duty is really duty of *utmost* good faith); Prosser, 225 Wis. 2d at 138 (insurance company must exercise same ordinary diligence in settling claims for insured as it would in its own business). Specific obligations include diligent investigation, informing the other party of the likelihood of liability and timely informing the other party of settlement offers received and progress of settlement negotiations. Defendant alleges that plaintiff failed to properly advise it and mishandled the claim by failing to make clear that the appraiser should not consider the rezoning issue in assessing WM's loss. As discussed

14

previously, there is no evidence that plaintiff acted in bad faith or failed to exercise the care and diligence that an ordinary, prudent party would exercise in the management of its own business.

Accordingly, plaintiff's motion for partial summary judgment with respect to liability is granted and defendant's motion for summary judgment is denied. The case will proceed solely on plaintiff's claim for damages.

ORDER

IT IS ORDERED that:

1. Plaintiff Chicago Title Insurance Company's motion for partial summary judgment, dkt. #18, is GRANTED. Defendant Runkel Abstract & Title Company's motion for summary judgment, dkt. #25, is DENIED.

2. Plaintiff's motion to strike, dkt. #36, is DENIED as unnecessary.

Entered this 6th day of April, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

15